EXHIBIT 1

## Barbara Gradley

**From:** Ed Coll
**Sent:** Tuesday, July 05, 2005 9:58 AM
**To:** Operations
**Subject:** FW: Tubarao


-----Original Message-----
**From:** S.Dobrikov [mailto:s.dobrikov@vstvarna.com]
**Sent:** Tuesday, July 05, 2005 9:57 AM
**To:** Ed Coll
**Subject:** Tubarao

Ed / Svetoslav

Mv Big Crown or sub - as described
Expected ETA Tubarao - 27.07
If substitute will be used same to be nominated latest 12 days prior ETA
(the 12 days notice is imperative for the shippers - it is as per c/p)

For

- accnt Kremikovtzi Trade or nominee
- 1 sb Tubarao / 1 sa + 1sb Bourgas 10.97 m bwad
- 70000 mts 10 pct moloo iron ore in bulk
- At Bourgas vsl to be lightened on roads at chrtrs expenses upto 29000 mts ino vsl to be berthed
- l/c 25.07 - 10.08
- scale load / 12000 c disch
- . 12 hrs tt bends usc
- Frt usd 23.50 pmt fios bss 1/1 payable w/l 10 work days after s+r orig bs/l claused "frt payable as per c/p" but in any case before BBB
- Dem usd 21000 pdpr / hd lts be
- Chabe and at Bourgas to be used the tug company appointed by the agents/chrtrs
- Owise as per chrtrs Orevoy p/a c/p with 3.75 pct add comm. pus. 1.25 % add comm. to be paid to VST or nominee and a side letter to be signed for the same.
- Sub stem/shippers approval to be lifted w/l 24 hrs after fixing main terms.

End

Rvrting with the c/p p/a.

Brgds/S.Dobrikov


BRGDS/S.DOBRIKOV
VARNA SHIPPING AND TRADING LTD
ISO 9001:2000 CERTIFIED
BIMCO MEMBER No 126525

9000 VARNA, BULGARIA
ST. NIKOLA 1-967
TEL: +359 52 38 75 50
FAX: +359 52 38 75 58
TELEX:  77 609 VSTVAR
E-MAIL: VST@VSTVARNA.COM
PERSONAL E-MAIL:S.DOBRIKOV@VSTVARNA.COM

THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
STANDARD ORE CHARTER PARTY
CODE NAME: "OREVOY "

| 1 Shipbroker | 2 Place and date of Charter Party |
|---|---|
| **Varna Shipping & Trading Ltd.**<br>**1-967 "St. Nikola" area**<br>**9010, Varna, Bulgaria** | |
| 3 Owners/Disponent Owners/Time-Chartered Owners (indicate name, address & telex number)<br><br>**Messrs:** | 4 Charterers (indicate name, address, & telex number)<br>**KREMIKOVTZI Trade or nominee** |
| 5 Vessel's name and flag | 6 Rate in tons per hour (load.) (Cl. 1.4.) |
| 7 Vessel's particulars, if required (Cl. 1.)·<br>**PLS SEE CLAUSE 6A** | 8 Present position and prior commitments, if known (Cl. 2.2.)<br>**TRADING** |
| 9 Laydays date (Cl. 2.1)<br>**PLS SEE CLAUSE 5A** | 10 Expected readiness to load (Cl. 2.2.) |
| 11 Cancelling date (also state if other period of declaration of cancelling agreed (Cl. 2.3.)<br>**PLS SEE CLAUSE 5A** | 12 Substitution (state "no" if agreed) (Cl. 4) |
| 13 Cargo (5 per cent. more or less in Owners' option unless other margin agreed) in tons of 1000 kilos (if full and complete cargo not agreed state "part cargo") (Cl. 5.1.)<br><br>**PLS SEE CLAUSE 1A AND 2A** | |
| 14 Advance notices (load. and disch.) (state number of running days' notice to be given and to where) (Cl.<br>**AS PER CLAUSES 27, 28, 29** | |
| 15 Loading port(s)/berth(s) (Cl. 7.1.)<br><br>**1 SAFE BERTH  TUBARAO** | 16 Discharging port(s)/berth(s) (Cl. 7.2.)<br>**1 SAFE ANCHORAGE PLUS 1 SAFE BERTH  BOURGAS,**<br>**WHERE 36 FEET BRACKISH WATER DRAFT, MAX**<br>**LOA 244 M** |
| 17 Reduced voyage speed (state "no" if not agreed) (Cl. 7.1.) | 18 Notice time in running hours (load. and disch.) (only to be filled in if agreed) (Cl. 8.2.1.) |
| 19 Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b); if total time for load. and disch. fill in c) only) (Cl. 8.2.5. & 8.2.6.)<br><br>a) Laytime for loading<br>**TUBARAO– SCALE SHINC** | 20 Laytime exceptions (loading) (Cl. 8.3.1.) |
| b) Laytime for discharging<br><br>**BOURGAS - 12000 MTS PWWD OF 24 SHINC** | 21 Laytime exceptions (discharging) (Cl. 8.3.1) |
| c) Laytime for loading and discharging (Cl. 8.2.2) | |
| 22 Demurrage rate (loading) (Cl. 8.5.2)<br><br>**AS PER CLAUSE 26** . | 23 Demurrage rate (discharging) (Cl. 8.5.2)<br><br>**AS PER CLAUSE 26** |
| 24 Despatch money (load. &/or disch.) (Optional; if agreed indicate rate of despatch money) (Cl. 8.5<br>**HALF DEMURRAGE RATE** | 25 Freight tax (State whether for Owners' or Charterers' account) (Cl. 13.)<br><br>**CHARTERERS' ACCOUNT** |
| 26 Agents at loading port(s) (Cl. 12.)<br><br>**MESSRS. NORSUL BARWIL AGENCIAS** | 27 Agents at discharging port(s) (Cl. 12.)<br><br>**MESSRS. DIVAMAR** |
| 28 Freight rate per metric ton (state whether fully or partly prepaid) (Cl. | 29 Freight payment (currency and/where payable; also state beneficiary and bank account) (Cl. 13.) |
| 30 General average shall be adjusted/settled at (Cl. 20.)<br>**LONDON** | 31 Law and Arbitration (state 23.1., 23.2 or 23.3 of Cl. 23 as agreed; if 23.3 agreed state place of arbitration) (if not filled in 23.1. shall apply) (Cl. 23.)<br>**LONDON** |
| 32 Brokerage commission and to whom payable (Cl. 24.)<br>**3,75 PCT ADDRESS COMMISSION +**<br>**1,25 PCT TO VARNA SHIPPING & TRADING LTD.** | 33 Numbers of additional clauses covering special provisions, if agreed<br>**1A TO 14A BOTH INCLUSIVE  AND  25 TO 40 BOTH INCLUSIVE** |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter consisting of PART I including additional clauses, if any agreed and stated in Box 33 and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail other those of PART II to the extent of such conflict but no further.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

PART II
"OREVOY" Charter Party

PART II
"OREVOY" Charter Party

**1.  Vessel**

The Owners shall ................................................ 1 / 2

1.1. before and at the beginning of the loaded voyage exercise due diligence to make the vessel seaworthy and in every way fit for the voyage with a full complement of Master, officers and crew for a vessel of her type, tonnage and flag. ... 3 / 4 / 5 / 6

1.2. ensure that the Vessel and her Master and the crew will comply with all safety and health regulations and other statutory rules or regulations and internationally recognized requirements necessary to secure safe and unhindered loading of the cargo, performance of the voyage and discharge of the cargo. ... 7 / 8 / 9 / 10 / 11

The vessel shall ................................................ 12

1.3. be classed Lloyd's 100 A1 or equivalent unless otherwise agreed in Box 7 the Owners exercising due diligence to maintain that class during the currency of this Charter Party; ... 13 / 14 / 15

1.4. be suitable for mechanical loading of the cargo and capable of receiving the cargo at the rate (if any) specified in Box 6 and be suitable for grab discharge, failing which Clause B.3.3. shall apply and the Owners shall reimburse the Charterers any actual extra discharge costs; ... 16 / 17 / 18 / 19 / 20

1.5. be equipped to meet the technical requirements if and as specified in Box 7. ... 21 / 22

**2.**  ~~[As per Clause 50]~~
Laydays date, expected time of Arrival (E.T.A.) and Cancelling ... 23

2.1. Laydays shall not commence before 00.00 hours of the date ~~stated in Box 8.~~ However, notice of readiness may be given ................ before that date and notice time, if provided for in Box 18, shall run forthwith. ... 24 / 25 / 26 / 27

2.2. Present position of vessel as per Box 8 ... 28
Commitments prior to commencement of this Charter as per Box 8. ... 29
Expected readiness to load as per Box 10. ... 30

~~[As per Clause 52]~~
~~2.3.  The Charterers shall have the option of cancelling the Charter Party if the vessel be not ready to load on or before twelve midnight (24.00) on the cancelling date stated in Box 11.~~
~~If it appears that the vessel will be delayed beyond the cancelling date stated in Box 11 the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Vessel should be ready, giving notice thereof to the Charterers whether they will exercise their option of cancelling the Charter Party. The option must then be declared within five (5) running days (unless otherwise agreed in Box 11) of the receipt by the Charterers of such notice, but not notice than twenty-four (24) running days before the revised date of next readiness. If the Charterers do not then exercise their option of cancelling, the seventh (7th) day after the readiness, date stated in the Owners notice shall be regarded as a new cancelling date. This provision shall operate only once and should the vessel not be ready to load on the new cancelling date the Charterers shall have the option of cancelling the Charter Party. The Charterers shall in any event declare whether they exercise any option of cancelling under sub – clause 2.3 no later than the time of the Vessel's readiness to load.~~ ... 31–50

**3.  Subletting, Assigning** ... 51

The Charterers shall have the liberty of subletting or assigning this Charter Party to any individual or company, but the Charterers shall always remain responsible for the due fulfilment of all the terms and conditions of this Charter Party and shall warrant ............ that any such sublet or assignment will not result in the vessel being restricted in her future trading. ... 52 / 53 / 54 / 55 / 56 / 57

**4.  Substitution** ... 58

The Owners shall have liberty to substitute a vessel, provided that such substitute Vessel's main particulars and position shall be subject to the Charterers' prior approval, which is not to be unreasonably withheld, but the Owners under this Charter Party shall remain responsible to the Charterers for the due fulfilment of this Charter Party. ... 59 / 60 / 61 / 62 / 63 / 64
This clause shall not apply if "No" inserted in Box 12. ... 65

**5.  Cargo** ... 66

5.1. The Charterers warrant that, unless otherwise specified in Part I, the cargo referred to in Box 13 is non-dangerous for carriage according to applicable safety regulations including IMCO Code(s) ... 67 / 68 / 69 / 70

5.2. The Charterers shall have the right to ship parcels of different qualities and/or different receivers in separate holds within the vessel's natural segregation and suitable for her trim provided that such parcels can be loaded, carried and discharged in accordance with the vessel's seaworthiness. Other means of separation of different parcels maybe specified in Part I. ... 71 / 72 / 73 / 74 / 75 / 76

5.3. Unless otherwise agreed in Part I, all quantities shall be expressed in tons of 1000 kilograms. ... 77 / 78

**6.  Advance notices** ... 79

The Owners or the Master shall give notice of expected readiness to load /discharge as specified in Box 14 to the parties named therein and shall keep those parties advised of any alteration in expected readiness ... 80 / 81 / 82 / 83

**7.  Port of loading, Voyage, Port of discharge** ... 84

7.1. After completion of prior commitments as may be stated in Box 8, the vessel shall proceed to the loading port(s)/berth(s) as stated in Box 15. ... 85 / 86 / 87

---

7.2. The vessel shall carry the cargo with all possible despatch to the port(s) / berth(s) of discharge stated in Box 16. However, unless "No" inserted in Box 17, the Owners may order the vessel to proceed at reduced speed solely to conserve fuel. ... 88 / 89 / 90 / 91 / 92
~~If the Charterers have the right to order the vessel to discharge at one or more ports, but at several ports named or which a specific range, the Charterers shall declare the actual port(s) of discharge to be inserted in the Bills of Lading prior to the arrival of the Vessel at the first port of loading.~~ ... 93 / 94 / 95 / 96

7.3. Only when the loading/discharging port(s)/berth(s) are not specifically mentioned herein, the Charterers warrant the safety of port(s)/berth(s) nominated and that the vessel will be loaded and discharged always afloat. ... 97 / 98 / 99 / 100

7.4. The vessel shall be left in seaworthy trim for shifting between the berths and ports. ... 101 / 102

~~7.5. Unless otherwise agreed, loading and/or discharging at two or more ports shall be effected in geographical rotation.~~ ... 103 / 104

**8.  Notice of readiness, Laytime, Demurrage/dispatch Money** ... 105

8.1. Notice of readiness ... 106
8.1.1. At each port of loading and discharging notice of readiness shall be given to the Charterers or their agents when the Vessel is in all respect ready to load/discharge at the loading/discharging berth. ... 107 / 108 / 109 / 110
8.1.2. If a loading/discharging berth is not designated or such designated berth is not available upon the vessel's arrival at or off the port, notice of readiness may be given upon arrival at the waiting place at or off the port. ... 111 / 112 / 113 / 114
However, if the vessel is at that time prevented from proceeding to the loading /discharging berth due to her inefficiency, weather, tidal conditions, strikes of tugs or pilots or mandatory regulations, notice of readiness may be given only when such hindrance(s) has (have) ceased. ... 115 / 116 / 117 / 118 / 119
8.1.3. Notice of readiness can be given on any day at anytime. ... 120

8.2. Laytime ... ~~[As per Clause 54]~~ ... 121
8.2.1. The laytime shall commence when notice of readiness has been given and after expiration of notice time, if any, provided for in Box 18. ... 122 / 123 / 124
Should the vessel arrive at the (first) loading port and be ready to load before the date stated in Box 9, the Charterers shall have the right to start loading. The Charterers shall also have the right to load/discharge before the expiration of notice time. In either event during such periods only time actually used shall count as laytime or as time on demurrage. ... 125 / 126 / 127 / 128 / 129 / 130
8.2.2. The notice of readiness shall run continuously. ... 131
8.2.3. The notice time, if any, shall only apply at first or sole loading and discharging port, respectively. ... 132 / 133
8.2.4. If laid time for loading and discharging has been agreed in Box 19 notice time, if any, at port of discharge shall be applied whether the vessel be on demurrage or not on sailing from the (first) loading port. ... 134 / 135 / 136 / 137
8.2.5. Separate laytime – The cargo shall be loaded within the number of hours/days of 24 consecutive hours or at the average loading rate per day of 24 consecutive hours as stated in Box 19a. ... 138 / 139 / 140
The cargo shall be discharged within the number of hours/days of 24 consecutive hours or at a average discharging rate per day of 24 consecutive hours as stated in Box 19b. ... 141 / 142 / 143
8.2.6. Total laytime – The cargo shall be loaded and discharged within the number of hours/days of 24 consecutive hours stated in Box 19a. ... 144 / 145
8.2.7. In the case of loading and/or discharging at more than one berth, laytime shall run continuously as if loading/discharging had been effected at one berth only but without prejudice to sub-clause 8.3. ... 146 / 147 / 148

8.3. Suspension of Laytime ... 149

8.3.1. Unless the vessel is on demurrage, laytime shall not count ... 150

(i) during periods excepted as per Boxes 20 and 21, unless used, in which case only time actually used shall count; ... 151 / 152
(ii) for the duration of bad weather or sea conditions which actually prevent the vessel loading, discharging or the shifting between loading/discharging berths of the vessel; ... 153 / 154 / 155
(iii) if so provided for in Clause 14. ... 156
8.3.2. Time shall not count as laytime or as time on demurrage whilst vessel actually moving from waiting place whether at or off the port or from a tightening place off the port, until the vessel is securely moored at the designated load/discharge berth. ... 157 / 158 / 159 / 160
8.3.3. Time lost due to inefficiency or any other cause attributable to the vessel, her Master, her crew or the Owners shall not count as notice time or as laytime or as time on demurrage to the extent that loading or discharging or the matters covered by sub-clause 8.4.1. are hereby affected. ... 161 / 162 / 163 / 164 / 165
8.3.4. If pursuant to Clause 9.13 the vessel has to vacate the loading/discharging berth, notice time or laytime or time on demurrage shall not count from that time until she be in all respect in load/discharge and notification has been given to the Charterers accordingly. ... 166 / 167 / 168 / 169 / 170
8.3.5. If due to the matters referred to in sub-clause 8.3.3. or 8.3.4. the vessel loses her turn, time shall count again only as from 24 hours after nomination of the vessel's new readiness has been given to the Charterers or when loading/discharging resumes whichever may be sooner. ... 171 / 172 / 173 / 174 / 175

8.4. Termination of laytime ... 176

8.4.1. Laytime/Demurrage shall stop counting on completion of: ... 177
(a) load/discharge at the relevant port; (b) cargo documentation and/or draft survey for determination of cargo weight; (c) repairs to stevedore damage under Clause10.2. whichever may be the later. ... 178 / 179 / 180
8.4.2. If required, the Vessel shall leave the berth as soon as possible within her control on completion of loading/discharging, failing which the Charterers shall be entitled to prove damages provided that if she then has to wait for reasons (b) and/or (c) above, there must be a place available at which she can safely wait, and any extra expenses shall be for Charterers' account. ... 181 / 182 / 183 / 184 / 185 / 186

PART II
"OREVOY" Charter Party

**8.5. Demurrage/Despatch money**   *As per Clause 28*                   167

8.5.1. Demurrage accrued under this Charter Party shall be      188
considered as constituting liquidated damages for exceeding the  189
laytime provided for herein. However, if the vessel has been on  190
demurrage for 15 days or more and no cargo has been loaded the   191
~~Owners shall have the option of cancelling this Charter Party with~~  192
~~the Owners may allow to have agreed the Charterers shall be protected by~~  193
~~its Owners exercising their option of cancelling~~                    194

8.5.2. Demurrage shall be due and payable by the Charterers day  195
by     day at the rate specified in Boxes 22 and 23 and in the   196
manner provided for in Box 29.                                   197

8.5.3. Despatch money, if agreed upon in Box  24, shall be paid  198
promptly by the Owners to the Charterers at a half the demurrage  199
rate or as otherwise agreed upon in Box 24 for laytime saved in  200
loading and/or discharging.                                      201

**8.    Loading and discharging**                                202

9.1. The vessel shall be loaded and discharged as and where      203
ordered by the Charterers.                                       204

9.2. If the Charterers have not nominated a suitable loading or  205
discharging berth on the vessel's arrival off the port, or such berth  206
should not be available, the vessel is to wait at a suitable place at  207
or                                                               208
The Charterers shall have the right to designate a safe waiting  209
place,  otherwise  the  master  shall  choose  a  waiting  place  210
using due diligence to minimize extra shifting costs, provided for in  211
sub-clause 9.4.                                                   212

9.3. ~~The Charterers shall have the right to load and/or discharge at~~  213
~~two berths at each port or place subject to sub-clause 9.4.~~         214

9.4. Shifting – Costs of moving the vessel, including bunkers, in  215
excess of those which would have been incurred if the Charterers  216
had nominated a free loading or discharging berth on arrival,    217
provided the vessel arrives on or after the date stated in Box 9,  218
and/or if all the cargo had been loaded or discharged during one  219
operation at the first berth only other than a singular place off the  220
port, shall be for the Charterers' account unless caused by the   221
vessel's default. Other costs on board the vessel including wages and  222
officers' and crew's overtime charges to be for the Owners' account.  223

9.5. The Owners or the Master shall in due time prior to         224
commencement of loading submit to the Charterers (or their       225
agents) in loading the loading plan which shall be based         226
on a reasonable number  of shiftings between hatches and also     227
meet applicable rules and regulations including IMCO Code(s). The  228
Charterers shall inform the Owners/Master of any special         229
composition of cargo required  in sufficient time to permit the   230
Owners/Master to work out and submit such loading plan.          231

9.6. Prior to loading, the vessel's holds shall be adequately cleaned  232
for loading the contracted cargo.                                233

9.7. The Charterers shall, always within the capacity of the     234
loading installations, load and trim the cargo as per the loading plan,  235
free of any risk, liability and expense to the Vessel. Any extra  236
trimming, and/or levelling required by the Master or Owner shall be  237
performed at the Owners' expense and any time lost thereby shall  238
not count as a laytime/demurrage. Discharging, including shovel  239
cleaning, shall be affected by the Charterers free of any risk, liability  240
and expense to the vessel.                                       241

9.8. The vessel shall move along any one berth, as reasonably    242
required by the Charterers, solely for the purpose of making any  243
hatch or hatches available to the loading/discharging appliances at  244
that berth, and costs on board the vessel including bunkers, wages  245
and officers' and crew's overtime charges shall be for the        246
Charterers' account. However, the costs of any necessary outside  247
services shall be for the Charterers' account. Laytime or time on  248
demurrage shall not be interrupted thereby.                      249

9.9. The vessel shall work day and night and during any time as  250
may be excepted as per Box 20 and Box 21, as required by the     251
Charterers.                                                      252

9.10. The vessel shall, at her own risk and expense, open and close  253
hatches prior to and after loading/discharging and also          254
during loading/discharging as may be required by the Charterers to  255
protect the cargo, provided local shore labour regulations permit.  256
If same, however, is not permitted by local shore labour regulations,  257
shore labour is to be employed by the Charterers at their risk,   258
liability        and expense. The vessel shall furnish and give   259
free use of sufficient light for deck and holds, as on board.    260

9.11. The Charterers shall have the right to order the Vessel to  260
leave         without having loaded a full cargo, always provided  261
that the vessel be in seaworthy condition and that the Charterers  262
pay deadfreight according to Clause 13.7.                        263

9.12. Overtime for loading and discharging to be for the account of  264
the party ordering the same. If overtime be ordered by Port      265
Authorities or any other Governmental Agencies, the Charterers to  266
pay any extra expenses incurred. Officers' and crew's overtime   267
charges always to be paid by the Owners.                         268

9.13. In the event of loading/discharging being impossible due to  269
inefficiency or any other cause attributable to the vessel, her Master,  270
her crew or the Owners and such impossibility continuing for more  271
than three consecutive hours, the Charterers shall have the right to  272
order the vessel to vacate the berth and shifting from and back to  273
berth shall be at Owners' expense and time.                      274

**10.    Stevedore damage**                                      275

10.1. The Charterers shall be responsible for damage (beyond     276
ordinary wear and tear) to any part of the vessel caused by      277
stevedores at both ends. Such damage, as soon as apparent, shall  278
be notified immediately by the Master to the Charterers or their Port  279
agents and to their Stevedores. The Owners/Master shall endeavour  280
to obtain the Stevedores written acknowledgment of liability and to settle  281
stevedore damage claims direct with the Stevedores.              282
10.2. The Charterers have the right to perform any repairs of     283
stevedore damage   at  any moment   prior  to  or  before  the   284

The voyage, but must repair stevedore damage affecting the       285
vessel's seaworthiness before the vessel sails from the port where  286
such damage was caused.                                          287

**11.    Dues, Taxes and Charges, Extra Insurance**

11.1. On the vessel – The Owners shall pay all dues, duties, taxes  288
and other charges customarily levied on the Vessel, howsoever the  289
amount thereof may be assessed.                                  290

11.2. On the cargo – The Charterers shall pay all dues, duties, taxes  292
and charges levied on the cargo at the port of loading / discharging,  293
howsoever the amount thereof may be assessed.                    294

11.3. On the freight – Taxes levied on the freight shall be paid by  295
the Owners or the Charterers as agreed in Box 25.                296

11.4. Extra Insurance – Any extra insurance on cargo actually    297
paid by the Charterers owing to vessel's age, class, flag or      298
ownership shall be for the Owners' account and may be deducted    299
from the freight. The Charterers shall furnish evidence of payment  300
supporting any  such deduction. Unless a maximum amount has       301
been agreed in  Part I, such extra insurance shall not exceed the  302
lowest extra premium which would be charged for the vessel and    303
voyage in the London Insurance Market.                           304
No extra insurance for Owners' account due to vessel's age

**12.    Agents**                                                305

At the port(s) of loading the vessel shall be consigned to the    306
Agents as stated in Box26 and at the port(s) of discharge to the   307
agents as stipulated in Box27, the Owners always paying the       308
customary fees.                                                  309

**13.    Freight**   *see clause 8A*                             309

The freight at the rate stated in Box 28 shall be calculated on   310
intaken   quantity.                                              311

13.1. Prepaid – ~~If according to Boxes 28 or 29 freight is to be paid~~  312
~~on shipment, it shall be deemed earned and non-returnable vessel~~  313
~~and/or cargo lost or not lost.~~                               314
Bills of Lading showing "Freight prepaid" or the like shall not be  315
released until the freight has been paid in full.                316

13.2. After shipment – If according to Box 28 freight shall be    317
payable within a number of days after shipment, the freight shall be  318
deemed earned as per sub-clause 13.1. – *as per clause 8A*        319
~~In such case Bills of Lading shall not be endorsed "Freight prepaid"~~  320
~~or the like unless the freight has been paid.~~                 321

13.3. ~~Partly or delivery – If according to Boxes  28 and 29 a~~     322
~~percentage of the freight shall be payable on or per sub-clause~~    323
~~13.1.~~       13.2. the balance shall be paid as per sub-clause   324
13.4. ~~However, in         such case the total freight shall be~~    325
~~deemed earned as per 13.2. above.~~                            326
~~Charterers  shall  not  have  the  option  referred  to  in~~      327
~~sub-clause 13.4.1.~~

13.4. ~~On delivery – If according to Box 28 or 29 freight is payable~~  328
~~at destination or on right and free delivery of the cargo, it shall~~  329
~~be deemed earned until the cargo is thus delivered.~~           330

13.4.1. ~~On Delivered Weight – When the freight is payable on~~     331
~~delivery         or weight the Charterers shall have the option~~   332
~~of paying freight                 on delivered weight, provided~~  333
~~such option be declared in writing           before breaking bulk~~  334
~~and the weight be ascertained by official        weighing~~        335
~~machine, otherwise, by joint draught survey. The Charterers shall~~  336
~~pay  all  costs  incurred  in  connection  with  weighting  or  draught~~  337
~~survey. The Owner shall be at liberty to appoint check clerks at~~  338
~~their own expense.~~

13.5. ~~Deduction. The freight shall be paid in cash without discount~~  339
~~in              the manner described in Box 29. The Charterers shall~~  340
~~only be entitled to deduct from the freight any freight advance~~   341
~~made as per sub-clause 3.6, despatch money and extra insurance~~    342
~~provided properly documented, as per Clause 11.4.~~    *and discharging*  343

13.6. Freight Advance – The Owners shall put the Agents at the    344
loading  port(s) in funds to cover the vessel's ordinary          345
disbursements                        for Owners' account, prior to  346
the vessel's sailing from the port(s)                 of loading.  347
~~Otherwise     the     amount    shall   be    advanced     by   Charterers~~  348
~~and be endorsed upon the Bills of Lading as advance freight with the~~  349
~~addition of 3 percent to cover interest, commission and the cost of~~  350
insurance.

13.7. Deadfreight – If the Charterers fail to supply a cargo as    351
specified  in  Box 13, deadfreight shall be payable but the        352
Charterers shall not be bound to supply cargo in excess of any     353
quantity stated by the Owners as the vessel's capacity more available to  354
the Charterers shall be calculated on that quantity.               355
The Owners (and Master) are entitled to clause Bills of Lading for  356
any deadfreight due.                                             357
If the Shippers/Suppliers state in writing that no more cargo will be  358
shipped, the Owners shall not need to have any such statement      359
confirmed by the Charterers.                                     360

**14.    Strikes and Other Hindrances**                          361

In the event of the causes referred to in Clause 21.2. either      362
preventing or delaying or, being already in existence, threatening   363
to prevent or delay the loading of the cargo intended for the      364
vessel, or its discharging, the following provisions shall apply:   365

14.1. Loading Port – when the vessel is ready to proceed from     366
her last port or at any time during the voyage to the port or ports  367
of loading or after her arrival there, the Owners may ask the      368
Charterers to declare that they agree to count the laytime as if   369
there were  to be no such hindrance. Unless the Charterers have     370
given such declaration in writing (by telegram or telex if necessary)  371
on the second business day after receipt of the request, the       372
Owners            shall have the option of cancelling this Charter  373
Party. If part cargo        has already been loaded the             374
vessel must carry it to the port of      discharge (freight         375
payable on loaded quantity only) having liberty        to           376
complete with whatever cargo on the way for the Owners' own account,  377

PART II
"OREVOY" Charter Party

completion of                                                          port

without time counting. In case of more than one loading port and if     379
the causes referred to above do not prevent the loading in all          379
ports, the Charterers are entitled to order the vessel to proceed to    380
the second or subsequent port and thereto to load a full cargo; in      381
such event, the Owners are not entitled to cancel the Charter Party     382
as heresbove stipulated.                                                383

14.2. Discharging port – On or after the Vessel's arrival at or off the  384
port of discharge, the Vessel shall wait until any such hindrance is    385
at an end, the Charterers paying half demurrage after expiration of     386
laytime(unless the vessel is already on demurrage in which event        387
full demurrage remains payable) full demurrage being payable            388
from the moment when the hindrance is at an end.                        389
The Charterers shall have the option at any time of ordering the        390
Vessel to another safe port within 600 nautical miles' distance         391
where she can safely discharge without being detained by any            392
cause enumerated above. Shifting time shall count as laytime or         393
as full demurrage time as the case may be.                             394
The Charterers shall reimburse the Owners additional port charges       395
including pilotage and canal dues, if any, incurred therefor,          396
however, the Owners shall bear the costs of bunkers consumed. All       397
conditions of this Charter Party and of the Bills of Lading issued      398
hereunder shall apply to the delivery of the cargo at the substituted   399
port and the Owners shall receive the same freight as if the cargo      400
had been discharged at the original destination.                       401

15.   Ice                                                              402

      Loading Port                                                      403

15.1. If the Vessel cannot reache the loading port by reason of ice     404
when she is ready to proceed from her last port, or at any time         405
during the voyage, or on her arrival, or if frost sets in after her     406
arrival, the Master – for fear of the Vessel being frozen in – is at    407
liberty  to leave without cargo; in such cases this Charter Party       408
shall become null and void.                                            409

15.2. If during the loading the Master, for fear of the Vessel being    410
frozen in, deems it advisable to leave, he has the liberty to do so     411
with what cargo he has on board and to proceed to any other port        412
with option of completing with cargo for the Owners' own account        413
to any port or ports including the port of discharge. Any part cargo    414
thus loaded under this Charter Party is to be forwarded to             415
destination at the Vessel's expense against payment of the agreed       416
freight, provided that no extra expenses be thereby caused to the       417
Charterers, freight bein paid on the quantity delivered (in            418
proportion if lump sum), all other conditions as per Charter Party.     419

15.3. In case of more than one loading port, and if one or more of      420
the ports are closed by ice, the Master or the Owners to be at          421
liberty either to load the part cargo at the open port and fill up      422
elsewhere for Owners' own account as under sub-clause 15.2. or          423
to declare the Charter Party null and void, unless the Charterers       424
agree to load full cargo at the open port.                             425

      Voyage and Discharging Port                                       426

15.4. Should ice prevent the Vessel from reaching port of              427
discharge, the Charterers shall have the option of keeping the         428
Vessel waiting until the re-opening of navigation and paying           429
demurrage, or of ordering the Vessel to a safe and immediately         430
accessible port where she can safely discharge without risk of         431
detention by ice. Such orders to be given within 48 hours after the    432
Master or the Owners have given notice to the Charterers of the        433
impossibility of reaching port of destination.                         434
15.5. If during discharging the Master, for fear of the Vessel being    435
frozen in, deems it advisable to leave, he has liberty to do so with    436
what cargo he has on board and to proceed to the nearest              437
accessible port where she can safely discharge. Such port to be        438
nominated by the Charterers as soon as possible, but not later         439
than 24 unning hours, Sundays and holidays excluded, of receipt        440
of the Owners' request for nomination of a substitute discharging      441
port, failing which the Master will himself choose such port.          442
15.6. On delivery of the cargo at such port, all conditions of the Bill  443
of Lading shall apply and the Owners shall receive the same           444
freight as if the Vessel had discharged at the original port of        445
destination, except that if the distance of the substituted port       446
exceeds 100 nautical miles, the freight on the cargo delivered at       447
that port is to be increased in proportion.                            448

16.   War Risks ("Voywar 1950")                                       449

16.1. In these clauses "war risks" shall include any blocade or any    450
action which is announced as a blockade by any Government or by any     451
belligerent or by organized body, sabotage, piracy, and any actual     452
or threatened war, hostilies, warlike operations, civil war, civil com-  453
motion, or revolution.                                                 454

16.2. If at any time before the Vessel commences loading, it appears    455
that performance of the contract will subject the Vessel or her Master  456
and crew or her cargo to war risk at any stage of the adventure, the   457
Owners shall be entitled by letter or telegram despatched to the       458
Charterers, to cancel this Charter Party.                              459

16.3. The Master shall not be required to load cargo or to continue     460
loading or to proceed on or to sign Bill(s) of Lading for any adventure,  461
on which or any part at which it appears that the Vessel, her Master    462
and crew or her cargo will be subject to war risks. In the event of     463
the exercise by the Master of his right under this Clause after part or  464
full cargo has been loaded, the Master shall be at liberty either to    465
discharge such cargo at the loading port or to proceed therewith.       466
In the latter case the Vessel shall have liberty to carry other cargo    467
for Owners' benefits and accordingly to proceed to and load for        468
discharge such other cargo at any other port or ports whatsoever,       469
backwards or forwards, although in a contrary direction to or out of or  470
beyond the ordinary route. In the event of the Master electing to       471
proceed with part cargo under this Clause freight shall in any case      472
be payable on the quantity delivered.                                  473

16.4. If at the time the Master elects to proceed with part or full cargo  474
under Clause 16.3., or after the Vessel has left the loading port, or    475
the                 last of the loading ports if more than one, it appears  476
that further         performance of the Charter Party will subject         477

her Master and crew or her cargo, to war risks, the cargo shall be      478
discharged, or if the discharge has been commenced be                  479
completed, at any port in vicinity of the port of discharge  as         480
may be ordered by the Charterers. If no such orders shall be           481
received from the Charterers within 48 hours after the Owners           482
have despatched a request by telegram or telex to the Charterers       483
for the nomination of a substitute discharging port, the owners shall    484
be at liberty to discharge the cargo at any safe port which they         485
may, in their discretion, decide on and such discharge shall be         486
deemed to be due fulfilment of the Charter party. In the event of       487
cargo being discharged at any such other port, the Owners shall         488
be entitled to freight as if the discharge had been effected at the      489
port or ports named in the Bill(s) of Lading, or to which the Vessel     490
may have been ordered pursuant thereto.                                491

16.5 (a)The Vessel shall have liberty to comply with any directions      492
or recommendations as to loading, departure, arrival, routes, ports     493
of call, stoppages, destination, zones, discharges, delivery or in       494
any other wise whatsoever (including any port of                        495
recommendation not to go to the port of destination or to delay         496
proceeding thereto or to proceed to some other port) given by any        497
Government or by any belligerent or by any organized body               498
engaged in civil war, hostilities or warlike operations or by any        499
person or body acting or purporting to act as or with the authority      500
of any Government or belligerent or of any such organized body or        501
by any committee or person having under the terms of the war             502
risks insurance on the Vessel, the right to give any such directions      503
or recommendations. If, by reason of or in compliance with any           504
such direction or recommendation, anything is done or is not done,       505
such shall not be deemed a deviation.                                   506

(b) If, by reason of or in compliance with any such directions          507
or recommendations, the Vessel does not proceed to the port of          508
ports named in the Bill(s) of Lading or to which she may have been       509
ordered pursuant thereto, the Vessel may proceed to any port as         510
directed or recommended or to any safe port which the Owners            511
in their discretion may decide on and there discharge the cargo.         512
Such discharge shall be deemed to be due fulfilment of the              513
Charter        Party and the Owners shall be entitled to freight as       514
if discharge          had been effected at the port or ports              515
named in the Bill(s) of Lading, or to which the Vessel                    516
may have been ordered pursuant thereto.                                517

16.6. All extra expenses (including insurance costs) involved            518
in discharging cargo at the loading port or in reaching or               519
discharging the cargo at any port as provided in Clauses 16.4 and        520
16.5(b) hereof shall be paid by the Charterers and cargo owners,         521
17.   and the Owners shall have a lien on the cargo for all moneys due
      under these Clauses.                                             522

      Lien                                                             523

      The Owners shall have a lien on the cargo for freight,             524
      deadfreight, demurrage, and damages for detention. The           525
      Charterers        shall remain responsible for deadfreight and     526
      demurrage (including     damages for detention) incurred at port   527
      of loading. The Charterers        shall also remain responsible    528
19.   for freight and demurrage (including      damages for detention)   529
      incurred at port of discharge, but only to        such extent      530
      as the Owners have been unable to obtain payment thereof by
      exercising the lien on the cargo.                                531

      Liberty                                                          532

      The Vessel shall have liberty to sail with or without pilots, to tow or  533
      to go to the assistance of vessels in distress, to call at any port or  534
19.   place for oil fuel supplies, and to deviate for the purpose of saving  535
      life or property, or for any other reasonable purpose whatsoever.  536

      Both-to-Blame Collision Clause                                    537

      If the Vessel comes into collision with another vessel as a result  538
      of the negligence of the other vessel and any act, neglect or      539
      default                of the Master, mariner, pilot or the servants  540
      of the Owners in the             navigation or in the management of  541
      the Vessel, the owners of                        the cargo carried  542
      hereunder will indemnify Owners against all loss             or     543
      liability to the other or non-carrying vessel or her Owners in so   544
      far as such loss or liability represents loss of, or damage to, or  545
      any claim whatsoever of the owners of said cargo, paid or          546
      payable by the other or non-carrying vessel or her owners to the   547
      owners of said cargo and setoff, recouped or recovered by the      548
      other or non-carrying vessel or her Owners as part of their claim   549
      against the carrying vessel or Owners. The foregoing provisions     550
      shall also apply where the owners, operators or those in charge of  551
20.   any vessel or vessels or objects other than, or in addition to, the  552
      colliding vessels or objects are at fault in respect of a collision or
      contact.                                                        553

      General Average and New Jason Clause                              554

      General Average shall be adjusted and settled at the place        555
      indicated               in Box 30 according to the York/Antwerp    556
      Rules, 1974, or any               modification thereof, but if      557
      notwithstanding the provisions specified              in Box 30,    558
      the adjustment is made in accordance with the law and             559
      practice of the United States of America, the following clause      560
      shall apply:                                                    561
      "In the event of accident, danger, damage or disaster before or     562
      after the commencement of the voyage, resulting from any cause     563
      whatsoever, whether due to negligence or not, for which,          564
      or for the consequence of which, Owners are not responsible,       565
      by statute, contract or otherwise, the goods, shippers, consignees  566
      of                owners of the goods shall contribute with Owners in  567

PART II
"OREVOY" Charter Party

the Vessel

**21.**

**Responsibilities and Immunities** 675

21.1.1. The Hague Rules contained in the International Convention 576
for the Unification of certain rules relating to Bills of Lading, 577
dated Brussels the 25th August 1924 as enacted in the country 578
of shipment shall apply to this Contract and to any Bill of Lading 579
issued hereunder. 580
When no such enactment is in force in the country of shipment, 581
the corresponding legislation of the country of destination shall 582
apply, but in respect of shipments to which no such enactments 583
are compulsorily applicable, the terms of the said Convention shall 584
apply.

21.1.2. In trades where the International Brussels Convention 585
1924 as amended by the Protocol signed at Brussels on February 586
23rd 1968 – The Hague-Visby Rules – apply compulsory, the 587
provisions of the respective legislation shall apply. 588

21.1.3. The Owners shall in no case be responsible for loss of or 589
damage to cargo howsoever arising prior to loading into and after 590
discharge from the Vessel or while the goods are in the charge 591
of another owner nor in respect of deck cargo and live animals. 592
This sub-clause shall not detract from the Owners obligations 593
under Clause 4. 594

21.2. Save to the extent otherwise in this Charter Party expressly 595
provided, neither party shall be responsible for any loss or 596
damage or delay or failure in performance hereunder 597
resulting from Act of God, war, civil commotion, 598
quarantine, strikes, lockouts, arrest or restraint of princes, 599
rulers and peoples or any other event whatsoever which cannot 600
be avoided or guarded against. 601

**22.**

**Bills of Lading** 602
603
22.1. Bills of Lading are to be signed as per the "Overvoybill" 604
Bill of Lading without prejudice to this Charter Party, and 605
the Charterers hereby indemnify the Owners against all liabilities 606
that may arise from the signing of Bills of Lading as presented to 607
the extent that the terms of such Bills of Lading impose more 608
onerous liabilities upon the Owners than those assumed by the 609
Owners under the terms of this Charter Party. 610
Neither the Owners nor their Servants shall be required to sign or 611
endorse Bills of Lading showing freight prepaid unless and until the
freight due to the Owners has actually been paid. 612
613
22.2. The Master may be required to sign separate Bills of Lading 614
for cargo in different holds or for parcels properly separated upon 615
shipment by the Charterers or their Agents, the Owners not being 616
answerable for separate delivery , nor for the cost of cargo
shortdelivered (if any) provided all the cargo taken on board is delivered.

**23.**

general                      average to the payment of any sacrifices, 573
losses or expenses of          a general average 574
nature that may be made or incurred and shall pay salvage and
special charges incurred in respect of the goods. If a serving
Vessel is owned or operated by Owners, salvage shall be paid for as 617
fully as if the said salving Vessel or Vessels belonged to strangers.
Such deposit Owners, or their agents, may deem sufficient to cover the 618
estimated contribution of the goods and any salvage and special 619
charges thereon shall, if required, be made by the goods, 620
shippers, consignees or owners of the goods to Owners before 621
delivery." 622
623
624
625
**Law and Arbitration** 626

23.1. Unless otherwise agreed ( Box 31, this Charter Party shall 627
be governed by English Law and any dispute arising out of this 628
Charter Party or any Bill of Lading issued hereunder shall be 629
referred to arbitration in London, one arbitrator being appointed
by each party, in accordance with the Arbitration Act 1950 and 630
1979 or any statutory modification or re-enactment 631
thereof for the time being in force. On the receipt by 632
one party of the notification in writing of the appointment of the 633
other party's arbitrator, the party shall appoint their arbitrator within 634
fourteen days failing which the decision of the single arbitrator 635
appointed shall apply. If two arbitrators properly appointed shall 636
not agree they shall appoint an umpire whose decision shall be 637
final. 638
639
640
~~23.2. If agreed and stated in Box 31, this Charter Party shall be~~ 641
~~governed by U.S. Law and disputes arising out of the Charter~~ 642
~~Party or any Bill of Lading issued thereunder shall be~~ 643
~~arbitrated in New York in the following manner:~~ 644
~~One arbitrator is to be appointed by each of the parties hereto and~~
~~a third by the two so chosen. Their decision or that of any two of~~
~~them shall be final, and for the purpose of enforcing any award,~~ 645
~~this agreement may be made a rule of the court. The arbitrators~~ 646
~~shall be commercial men. Such arbitration is to be conducted in~~ 647
~~accordance with the rules of the Society of Marine Arbitrators, Inc.~~ 648
~~For disputes where the total amount claimed by either party does~~ 649
~~not exceed U.S.$ 2,500.00, or an amount as mutually agreed, the~~
~~arbitration may be conducted in accordance with the Simplified~~
~~Arbitration Procedure of the Society of Maritime Arbitrators Inc. if~~
~~so desired by both parties.~~

23.3. If agreed and stated in Box 31, any disputes arising out of 650
this Charter Party or any Bill of Lading issued thereunder shall 651
be referred to arbitration at the place or before the arbitration 652
tribunal included in Box 31, subject to the law and procedures 653
applicable there.
654
655
656
**24.**

**Brokerage**

24.1. The brokerage as stated in Box 32, or freight and deadfreight
shall be paid by the Owners and is deemed to be earned by the
Brokers upon shipment of cargo.

24.2. In case of cancellation pursuant to Clause 2.3, at least one
third of the brokerage on the estimated amount of freight shall be
paid by the Owners as indemnity to the Brokers.

| RIDER CLAUSES TO MV "........"  |
|---|
| CHARTER PARTY DATED ........ |

Both THE OWNERS and THE CHARTERERS mutually agree the following:

Clause 1A. CARGO AVAILABILITY

　　　Deleted. ·

Clause 2A. CARGO QUANTITY

　　　Cargo quantity: 70 000 metric tons 10% more or less in Owners option of iron ore in bulk , always excluding DRI/DRIP always loaded according to latest IMO Regulations and Recommendations.

Clause 3A. PORT OF LOADING

　　　1 safe berth Tubarao in Brazil.

　　　Owners shall provide vessels suitable for loading at Shippers' loading facilities. In this connection, Charterers/Shippers confirm the acceptable dimensions for loading at their piers.

　　　Owners to satisfy themselves as to the restrictions at the ports of loading.

Clause 4A. PORT OF DISCHARGING

　　　1 safe anchorage + 1 safe berth Bourgas 10.97 m brackish water arrival draft with following dimensions for vessel's discharging:

- maximum arrival draft  -  36 feet brackish water
- maximum length overall - 244.00 m - (upto 254.00 m on case by case basis)
- Owners to satisfy themselves as to the restrictions at the port of discharging.

Vessel to be lightened on roads up to 29000 mts at Charterers' expenses/time/risk in order to reach 36'bwad.

Clause 5A. LAYDAYS/CANCELLING

RIDER CLAUSES TO MV "..........."
CHARTER PARTY DATED ........

Clause 6A. VESSEL'S DESCRIPTION

Clause 7A. POSSIBLE AMENDMENTS IN THE LAYCAN & NOMINATION CLAUSE

Monthly shipping schedule, indicating quantities, cargo specifications and the laydays for each shipment, shall be submitted by Charterers to Owners at least 30 days before the commencement of each month.

Owners to nominate a vessel or sub (with a name and itinerary in order to be presented for shippers' approval) 15 days before commencement of the month of loading, which to be accepted or rejected within 1 working day SSHEX after receipt of vessel's nomination.

Final performing vessel to be nominated latest 12 days prior to vessel's ETA load port.

Owners to narrow laycan to 10 days spread together with nomination. Final performing vessel to be reconfirmed by Charterers within 1 working day.

Charterers will keep Owners informed about any possible amendment in the declared schedule program and Owners to be notified within 15 working days prior altered laydays/cancelling dates, but in any case prior to Owners' final performing vessel nomination. It is herewith understood that 'ammendment' means postponing only.

Clause 8A. FREIGHT RATE AND PAYMENT

100 pct less 3.75 pct address commission is to be paid by Charterers to Owners nominated bank within 10 (ten) work days after signing/releasing Bill of Lading claused "Freight payable as per Charter Party", but in any case before breaking bulk.
Balance of agreed demurrage/despatch to be settled within 15 days after completion of discharge provided Owners have submitted their final account for each voyage and invoice duly supported. Full freight to be deemed earned as cargo loaded on board, discountless and non-returnable, ship and/or cargo lost or not lost.

Owners bankers:

Freight rate:

RIDER CLAUSES TO MV "........."
CHARTER PARTY DATED ........

Clause 9A. LIGHTERAGE/LIGHTENING AT BOURGAS ROAD

DISCHARGING CONDITIONS

a)    LIGHTERAGE OPERATIONS
      All Ocean Going Vessels (OGV) in excess of 10,97 M Brackish Water
      Arrival Draft (BWAD) Bourgas will first arrive and anchor off at the
      lighterage site designated by Charterers/Bourgas Maritime Authority. The
      lighterage site is located at about 3 / 4 miles off Bourgas. The Master shall
      follow the instructions of Loading Master contactable on the  Transfer
      Barge or at Charterers' agents for anchoring and/or double banking his
      vessel with the Transfer Barge (TB) in accordance with IMO Ship
      Transfer Guide (Annex I to Lighterage Contract also hereto attached).
      Owners to ensure safe arrival at above site for the purpose of lighten
      down to 10,97 M bw draft for the vessel to enter the port of Bourgas. See
      also cls. 36 of Charter Party.

      Cargo shall be first discharged by lighterage operation according to ship to
      ship Transfer Guide issued by OCIMF and relevant for dry cargoes.

b)    N.O.R. I/ Laytime at Lighterage Point
      The Notice of Readiness I (One) shall be tendered in writing to Charterers
      or their Agents by cable/telex on arrival at lighterage site location stated at
      a) above, provided the vessel is in free pratique and ready to discharge her
      cargo in every respect.
      Laytime shall commence as per clause no. 29. The laytime counting shall
      cease upon vessel's reaching a BWAD of 10,97 Metres or such draft as
      decided by the Loading Master.

c)    Discharge Rate at Lighterage Point
      Cargo shall be lightered by the Transfer Barge using her own four cranes
      and grabs, at the rate of 12 000 MT per WWD of 24 consecutive hours
      SHINC free of risk and cost to the Ocean Going Vessel, so as to reduce the
      draft of Ocean Going Vessel (OGV) to minimum required to enable the
      OGV to proceed safely towards the discharging berth in the Bourgas port
      as directed by Charterers or their Agents, provided the vessel has arrived
      with a total cargo quantity/relating draft to allow this as per a) above.

      The vessel shall be suitable for grab discharge and free of any deck
      obstructions.

      The crew of OGV shall provide all necessary help to the Transfer Barge as
      required for arranging mooring/unmooring and discharge operations at the
      lighterage site.

---

**RIDER CLAUSES TO MV "........."**
**CHARTER PARTY DATED ........**

---

d)  <u>N.O.R. II / Laytime at discharging berth – see cls. No. 29</u>

Any delay due to vessel awaiting tide, tugs or pilot shall not count as laytime or time on demurrage.

e)  <u>Discharging Rate at berth</u>

Completion of discharge of OGV at the discharging berth in the port of Bourgas will be done by shore unloaders.
The cargo shall be discharged at an average rate of 12 000 MT per WWD of 24 consecutive hours, SHINC.

f)  <u>Summary of discharging rates</u>

| At Lighterage Point | At berth |
|---|---|
| Average rate of 12 000 MT per WWD of 24 consecutive hours SHINC basis gearless bulkcarrier without obstructions on deck | 12 000 MT per WWD of 24 consecutive hours SHINC |

g)  <u>Cost of Discharging</u>
The cargo shall be discharged and taken alongside the vessel free of risk, liability and expenses whatsoever to the Owners of the OGV.

h)  <u>Agents at Disport</u>
Owners paying customary agency fees.

i)  Lighterage shall be carried out by ship to ship transhipment by Charterers Transfer Vessel free of risk to vessel.

ii)  <u>Tug service at Port of discharge</u>
At Bourgas to be used the tug company appointed by the Agents/Charterers.

<u>Clause 10A.</u>
Otherwise as per Charterers' proforma OREVOY Charter Party, attached hereto.

---

RIDER CLAUSES TO MV "..........."
CHARTER PARTY DATED ........

---

**ADDITIONAL CLAUSES THE "OREVOY" CHARTER PARTY DATED......**

Clause 25. LOADING AND DISCHARGING RATES AND CALCULATION OF LAYTIME

*Port of Tubarao*
  Loading rate: Scale loading as follows: 65 consecutive hours for first 60 000 metric tons cargo loaded, then 1 additional hour per each 6000 metric tons cargo loaded thereafter, Sundays included, but official holidays always excluded unless used. Turn time: 12 hours unless sooner commenced.

*Port of Bourgas*
  Discharging rate: 12 000 metric tons per weather working day, Sundays included, but official holidays always excluded unless used. Turn time: 12 hours unless sooner commenced.

  Notice of readiness (NOR) at the loading/discharging ports may be tendered after arrival of vessel within port limits of loading/discharging ports at any time irrespective of official office hours, Saturdays, Sundays included, but official holidays always excluded, provided that the vessels is in free pratique, gas free, cleared by port authorities and ready to receive cargo in every respect, otherwise Notice of Readiness will be cancelled.
  There must be no self-unloading equipment on board of the vessels, due to safety measures.
  Vessel shall be loaded in regular turn with all other vessels awaiting the same type of ore.
  If requested, a gas free certificate or declaration made by master of the vessel shall be presented to the port operator's Port Authorities prior to the berthing of the vessel. If such certificate or declaration is not presented, a gas free certificate by an independent licensed inspector shall be required and time lost due to the inspection shall not count as laytime, even if the vessel is on demurrage. It is not allowed for the vessel to proceed to gas freeing operations at the berth or its proximity.
  In case loading has to be interrupted or delayed due to insufficient ballast pump capacity, or to any other reason attributable to vessel, such time lost shall not count as laytime, even if vessel is on demurrage. If such interruption continues for more than 8 consecutive hours, the port shall have the right to order the vessel to vacate the pier and shift from and back to the berth at Owners' expense and time.
  Any time lost in trimming while the port operator awaits for master's instructions shall not count as laytime, even if vessel is already on demurrage.
  Shifting from anchorage to piers shall not count as lay time, even if vessel is already on demurrage.

  Time lost as a result of all or any of the clauses hereunder shall not be computed as laytime, even vessel is already on demurrage:
- Wars, rebellions, tumults, civil strikes, insurrections, riots and political disturbances;
- Epidemic and quarantine;

### RIDER CLAUSES TO MV "........."
### CHARTER PARTY DATED ........

- Strikes, lock-outs, partial or total strikes by miners, railway employees, stevedores, seamen or any other workmen connected with the mining transportation and the shipment of the ore;
- Accidents of the mines, railways and ports;
- Landslides and floods;
- Interventions of sanitary or other complement authorities;
- Partial or total interruptions on railway or port;
- Any case of whatsoever kind of nature, beyond the control of the port operator preventing cargo preparation, loading, discharging or berthing of the vessel.

If the dimensions of a vessel provided by Owners allow its berthing at either Pier 1 or Pier 2, the designation of the Pier to be used shall be at Shippers' exclusive discretion and vessel shall adjust its airdraft, if necessary, at Owners time and expense.

The vessels provided by Owners shall be brought alongside the loading docks with all holds cleaned and empty and in condition to load. Unless otherwise instructed by Shippers, Charterers shall instruct Master and Owners that vessels must be presented for berthing with minimum ballast compatible with its respective seaworthiness.

Clause 26.DEMURRAGE/DESPATCH CLAUSE

A) Charterers to pay demurrage, if any, at rate of ...... per day/ pro rata both at loading and discharging ports.

B) Half despatch on laytime saved both at loading and discharging ports.

C) Laytime to be non - reversible.

D) Demurrage, if any, is payable after right and true delivery of the cargo and against presentation to the Charterers of the Owner' Final Freight Statement together with Time Sheet both for loading and discharging ports, drawn up in accordance with C/P terms and conditions along with the original Statements of Facts, duly signed by Master, Agents and Shippers/Receivers, original Notice of Readiness for both ends and the Original C/P duly signed and stamped. The Owners are also to send at the same time all relative invoices.

Clause 27. NOTICES OF LOADING PORT:

Owners / Master to tender 12/10/7/5/3 days, 48 hours definite and 24 hours definite notices of E.T.A. at loading ports to:

- Charterers' agents
  **Messrs. Norsul Barwil Agencias Maritimas Ltda. – Brazil**
  **Tel: 0055 13 3219 1822 ; Fax: 0055 13 3219 5291**
  **e-mail: joseluiz.dias@barwil.com**
  **P.I.C.: Mr. Jose Luis Dias**

| RIDER CLAUSES TO MV "..........." |
| :---: |
| CHARTER PARTY DATED ........ |

- And to

  **VST Varna**
  **Bulgaria, Varna**
  **1-967 'St.Nikola' area**
  **tel:+359 52 38 75 00' fax:+359 52 38 75 59**
  **telex:77 609 vstvar**
  **e-mail:vst@vstvarna.com**

Master/Owners shall, with the 3 days' notice, also inform about each vessel's cargo plan and provide the following details:
- arrival and departure drafts
- air draft
- amount of ballast on arrival and, if in cargo holds, how distributed
-. time required for deballasting after berthing
- loading sequence
- information on whether a "Gas Free" certificate is required or not.


Clause 28. NOTICE AT DISCHARGING PORT

    On sailing load port, master and/or Owners to advise Charterers, VST Varna and discharge port agents quantity of cargo loaded, expected arrival draft and ETA at discharge port and in addition Owners and / or Master to give 12/10/7/5/3/2/1 days notice of vessel's ETA discharge port.

Charterers agents:

**DIVAMAR Plc.1ST Knyaz Baternberg Str.**
**P.O.Box 356, Bourgas 8000**
**Tel    : +359 56 841469,840033**
**Fax    : +359 56 841678**
**e-mail : divamar@bs.spnet.net**


Clause 29. NOTICES OF READINESS AND LAY TIME

A) At both loading and discharging port N.O.R. to be tendered in writing or by cable, fax or telex to the agents after vessel's arrival within port limits or at lighterage site if such operation needs to be performed  provided vessel is in free pratique, customs cleared and ready in all respects to load or discharge the cargo. If free pratique and customs clearance are not granted because vessel remains at anchor laytime to commence as per clause 8.2.1. of the OREVOY C/P, but to be interrupted if free pratique and customs clearance be refused upon berthing.
N.O.R. to be tendered any time day and night SHINC, excluding official holiday only.

**RIDER CLAUSES TO MV "..........."**
**CHARTER PARTY DATED ........**

B) In the event the vessel is compelled to wait for a berth at the load and / or discharge port due to congestion or any other reason for which Owners are not responsible, the Master may tender N.O.R. by cable, fax or telex whether in port or not, provided the vessel is unable to enter within the port limits, whether in berth or not, whether in free pratique or not, provided same is subsequently granted, whether customs cleared or not, provided same is subsequently granted, and laytime to commence as per clauses 8 and 5 of the OREVOY C/P; if after berthing, however, the vessel is found not to be ready in all respects to load and / or discharge the cargo, or is not in free pratique or customs cleared, then time shall commence to count as laytime immediately after the vessel is in free pratique, customs cleared and deemed ready in all respects to load and / or discharge the cargo.

C) Time used in shifting from the place of tendering of the N.O.R. and / or the waiting anchorage and / or berth to the place of loading and / or discharging is not to count as laytime, even if the vessel is already on demurrage and any shifting expenses to be for Owners' account. In the event such shifting is made before laytime commences, the shifting time is deemed to be used as part of the turn time, but any shifting expenses to be for Owners' account.

D) In the event of deadfreight being due, laytime is to be calculated not on the basis of the quantity actually loaded, but on the quantity freight and deadfreight had been paid for.

E) Laytime to be non-reversible.

F) With reference to clauses 8.4.1. of the OREVOY C/P, time for waiting draft survey for determination of loading / discharging cargo weight at the relevant port to count half.

G) Laytime shall commence from the acceptance of Notice of Readiness, provided the vessel is ready to receive cargo in every respect.
Laytime shall terminate upon completion of loading . Vessel shall sail from berth as soon as loading and subsequent formalities are completed.
If vessel's shifting along the pier is required in order to complete ship loading, for vessels within the acceptable dimensions, time and cost for shifting to be for Owners' account.
Waiting time due to tidal current restrictions, if any, shall not to count as laytime, even after completion of loading and weight determination.
Waiting time due to restrictions to maneuvering during night time, if any, shall not to count as laytime both ends loading/discharging.
If the vessel is required to load at more than one berth, shifting time shall not count as laytime.

Clause 30.

Vessel to furnish a certified calibration scale for all tanks including for and aft peak and double bottom tanks and deeptanks. Plimsoll marks and draft marks on the port and starboard side bows and sterns to be clearly cut and marked in shell plating. Vessel to

---

**RIDER CLAUSES TO MV "..........."**
**CHARTER PARTY DATED ........**

---

furnish capacity plan, displacement scale and same to be certified by master as their correctness t the time of loading.

#### Clause 31.

Master to authorize agents to sign bills of lading on his behalf in accordance with mate's receipt/draft survey or belt scale weight certificate. Master is to sign statement of facts concerning time used in loading and discharge submitted to him by agents, making his reservations if he believes this statement to be incorrect. Master to issue and sign statement that available cargo space has been utilized and stowed to his satisfaction.

#### Clause 32.

In the event of Bills of lading are not available upon vessel's arrival at discharge port, Owners are, if requested by the Charterers, to release the entire cargo without presentation of original Bills of Lading, against Owners' P and I standard letter of Indemnity and signed by Charterers only but in any case without bank guarantee.

#### Clause 33.

If required by Charterers one original B/L to be deposited with Master against his receipt for delivery to Receivers or their authorized representative. Owners / Master to accept delivery of cargo against such original B/L, duly endorsed by receivers or their authorized representative.

#### Clause 34.

Negotiations and terms and conditions of the fixture to be kept strictly private and confidential and not to be reported to third parties.

#### Clause 35. BIMCO ISM CODE CLAUSE

From the date of coming into force of the international safety management (ISM) code in relation to the vessel and thereafter during the currency of the charter party, the Owners shall procure that the vessel and the company (as definited by the ISM code) shall comply with the requirements of the ISM code. Upon request the Owners shall provide a copy of the relevant document of compliance (doc) and safety management certificate (smc) to the charterers.

Except as otherwise provided in this charter party, loss, damage, expenses or delay caused by the failure on the part of the owners or "the company" to comply with the ISM code, shall be for Owners' account.

| RIDER CLAUSES TO MV "..........."<br>CHARTER PARTY DATED ........ |
| :-: |

## Clause 36. BOURGAS LIGHTERAGE SITE / PORT OF BOURGAS BERTH DRAFT

Charterers guarantee that a brackish water arrival draft of 10,97 Metres is available at the discharging berth within the Port of Bourgas where the OGV shall discharge the balance cargo after lighterage operations, if same required.

Master of OGV to follow "INSTRUCTIONS TO MASTER OF OGV FOR LIGHTERAGE OFF BOURGAS" supplied by either Charterers' Bourgas Agents or by Charterers or by Master of Transfer Barge.

The OGV must arrive at the Bourgas lighterage site loaded with a cargo quantity and on such a draft so that after lightening down, OGV to reach the requested by Charterers suitable draft for entering Bourgas port.

The Owners shall be fully responsible for any and all consequences, delays, expenses or penalties that may be incurred by reason of the vessel's failure to arrive on such agreed draft and cargo quantity.

## Clause 37. COSTS AND EXPENSES

Cost of any extra trimming required by the vessel shall be for Owners' account.

If the vessel is required to load at more than one berth, shifting costs other than vessel's normal expenses, such as bunkers and overtime of officers and crew, shall be for Charterers account.

Normal working hours at loading ports are understood to be from zero to twenty-four o'clock, including Saturdays, Sundays. Ship's crew and officers' overtime shall be for Owners' account.

Charterers/Shippers shall provide for spout trimming at their own time and expense, free of risk and expense to Owners and/or vessels. In case of any damage to the vessel caused by Stevedores Co./Shippers, such damage shall be settled directly between Stevedores Co./Shippers and Owners

## Clause 38. BRAZILIAN NAVY.

Charterers shall be under no responsibility whatsoever, including costs, to Owners with relation to any action taken by the Brazilian Navy or by any other Brazilian Government authorities, if such authorities decide to delay the loading, to detain or to require any repairs in a specific vessel.

## Clause 39. U.S. Customs Advance Notification/AMS Clause

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

RIDER CLAUSES TO MV "..........."
CHARTER PARTY DATED ........

i)   Have in place a SCAC (Standard Carrier Alpha Code);
ii)  Have in place an ICB (International Carrier Bond);
iii) Provide the Owners with a timely confirmation of i) and ii) above; and
iv)  Submit a cargo declaration by AMS (Automated Manifest System) to the US
Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless
the Owners against any loss and/or damage whatsoever (including consequential loss
and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever
nature, including but not limited to legal costs, arising from the Charterers' failure to
comply with any of the provisions of sub-clause (a). Should such failure result in any
delay then, notwithstanding any provision in this Charter Party to the contrary, the
Vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges
which are solely the responsibility of the Owners, the Owners shall promptly reimburse
the Charterers for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for
the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to
the identity of carrier under any bill of lading, other contract, law or regulation.

Clause 40. BIMCO ISPS Clause.

(A)(I)
From the date of coming into force of the International Code for the Security of Ships and
of Port Facilities and the relevant amendments to Charter XI of SOLAS (ISPS Code) in
relation to the Vessel and thereafter during the currency of this Charter Party, the Owners
shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall
comply with the requirements of the ISPS Code relating to the Vessel and "the
Company". Upon request the Owners shall provide a copy of the relevant International
Ship Security Certificate (or the Interim International Ship Security Certificate) to the
Charterers. The Owners shall provide the Charterers with the full style contact details of
the Company Security Officer (CSO).

(II)
Except as otherwise provided in this Charter Party, loss, damage, expense or delay,
excluding consequential loss, caused by failure on the part of the Owners or "the
Company" to comply with the requirements of the ISPS Code or this Clause shall be for
Owners' account.

(B) (I)
The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with
their full style contact details and, where sub-letting is permitted under the terms of this
Charter-Party, shall ensure that the contact details of all sub-Charterers are likewise

| RIDER CLAUSES TO MV "........." |
| CHARTER PARTY DATED ........ |

provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter-party, shall ensure that the contact details of the sub-charterers are likewise provided to the Owners."

(II)
Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(C)
Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(D)
If either party makes any payment which is for the other party's account according to this Clause,   the other party shall indemnify the paying party.


OWNERS:                              CHARTERERS:

> RIDER CLAUSES TO MV "..........."
> CHARTER PARTY DATED ........

## INSTRUCTIONS TO BE GIVEN TO THE OGV'S

### LIGHTERAGE OPERATION OFF SHORE BOURGAS

### 1.  TRANSFER AREA

The transfer area/anchorage area is located nearby the Bourgas port B.A. chart no. 2399. Approximately, its position is within following points:

1) 42°30'.0 N        027°33'.0 E    2)  42°30'.0 N        027°34'.0 E
3) 42°29'.7 N        027°34'.0 E    4)  42°29'.7 N        027°33'.0 E

However final position shall be agreed time by time, also in accordance with Harbour Master, weather condition and port traffic, normally it will be about at the position mentioned above.

### 2.  CRANED BARGE MAIN PARTICULARS

LOA        121.92  m
BEAM       30.48 m
DWT        15,000 abt
Draught    6.30 m abt (loaded)

Two port side mounted cranes. Lighterage rate up to about 350 tph each crane.

### 3.  PREAMBLE

The OGV will have to comply with Bourgas Port regulations and the Bulgarian law. The OGV will have to comply with the instructions given by the craned barge operation manager and port authority during approaching and double-banking operations.
This will not relieve the OGV Captain and from their management and responsibility. OGV master has the ultimate responsibility for the OGV, including her draught after Lighterage.
At the above location the craned barge will lighten the OGV.
The lighterage operation will commence when the OGV is in all respect ready, duly anchored, with all the arrival formalities been completed, with hatch covers open and when the craned barge is safely berthed alongside the OGV.
OGV shall make available one cabin if requested by Agent or by the craned barge operation manager.

### 4.  COMMUNICATION

English language and standard navigational vocabulary must be used.

RIDER CLAUSES TO MV "..........."
CHARTER PARTY DATED ........

## 5. NOTICES

OGV master must give seventy two (72), twenty four (24) and twelve (12) hours notice of ETA to -----------via telex --------- or fax -------.

OGV master shall send following information seventy-two hours (72) before arrival:

a) OGV main characteristics including:

    a. LOA
    b. Beam
    c. Arrival draught
    d. DWAT
    e. Hold / hatches
    f. Hatch cover type
    g. Hatch cover keel distance
    h. Hatch dimensions (for each hold)
    i. Distance from ship rail to opposite hatch coaming
    j. Deck obstruction/s if any
    k. Proposed cargo stowage plan and loading sequences including hold by hold cargo quantity, percentage of hold capacity occupancy
    l. Final draft
    m. Distance between first hatch coaming foreward to last hatch coaming aftward
    n. Distance between bow forward to first hatch coaming foreward
    o. Distance between hatch coaming hold N° 1,2,3..... aftward to hatch coaming hold N° 1,2,3..... foreward (length of cross deck between all holds)
    p. Mooring equipment existing on main deck (wether fitted with spring winches
    q. Number of fair leads and number/ type and location of mooring bitts)
    r. Other fittings capable of accepting moorings like pad eyes, fastening points, etc.

b) Proposed lighterage and unloading sequences basis two cranes operating simoultaneously, plan including hold-by-hold cargo quantity to be unloaded to achieve the allowed even keel draught to enter the Bourgas port.

In order to minimize warping alongside the OGV, preference is to be given to central holds with exclusion (if feasible) or limit the use of extreme ones.

(For stress computation, please consider harbour condition).

| RIDER CLAUSES TO MV "..........." |
| :-: |
| CHARTER PARTY DATED ........ |

Should the OGV master fail to give the above notice, he may be kept waiting for the same period as that of the longest notice not given.

VHF contact will be established on channel 16 as soon as possible, thereafter switching to an agreed working channel (69 – 71 – 72 – 73) to co-ordinate on approach and mooring procedures.

### 6. OGV RESTRICTION
Beam            not exceeding 39 m
LOA             not exceeding 244 m
Air draught   not exceeding 14.5 m (water level to top hatch covers)

### 7. LIGHTERAGE QUANTITY/ALLOWED DRAUGHT AT BOURGAS

Vessel to be lightened on roads with a barge of about 15000 mts DWT at Charterers' expenses/time/risk, upon Charterers' request to reach suitable draft for entering Bourgas port. (Density 1.010).

### 8. APPROACH AND MOORING PROCEDURE

Maneuvering to be carried out in visibility and weather condition to ensure safety operation. Approach and mooring during darkness also may be exceptionally undertaken.

OGV will proceed to the Lighterage area unless otherwise agreed.  OGV will anchor following pilot and barge operation manager instructions.
Approaching, mooring and casting off operations as well as Lighterage operation can only take place if both the OGV' master and barge operation manager are satisfied as far as safety is concerned.

The berthing side will depend on the weather and wind conditions.
Engine controls, steering gear and all navigation, communication, mooring, safety and ballast equipment must be in good working order.

An experienced helmsman must be assigned to steer the OGV during the entire approaching and mooring procedures.

A fendering string consisting of n° three floating fenders is fitted on the barge OGV berthing side to protect barge and ship flat side. Additional fendering is positioned at the barge's corners.

OGV shall be ready to receive the barge on her starboard or portside, clean of any obstruction, with her mooring gang ready and well coordinated from bridge by means of hand held receivers.

OGV shall provide suitable mooring ballards / fairleaders ( alongside port and starboard) in order to guarantee proper lead of barge mooring lines.

---

**RIDER CLAUSES TO MV "..........."**
**CHARTER PARTY DATED ........**

---

Barge is equipped with fore and aft mooring winches fitted with ... mm diameter wires with nylon pendant at each end ........
In normal condition, the barge will use the above facility to moor, however the OGV should be ready, if required by the barge operation manager, to deploy her good mooring lines (preferably of synthetic fiber type) which shall be prepared and distributed on deck fore and aft.
The barge operation manager shall indicate the actual requirement and location of lines to the OGV depending upon the weather conditions.

Readjustment of mooring may be required during the transfer operation as well as shifting alongside may occasionally be requested by barge operation manager. OGV shall promptly co-operate with barge personnel.

## 9. LIGHTERAGE OPERATION

Final lightening hold sequence and quantity shall be agreed between OGV master and barge operation manager before the arrival of the OGV.

It is a preference but not a precondition to commence from the foremost hold and fall back alongside the vessel.

For the entire operation, the OGV engine must be on immediate standby for maneuvering. A close watch must be kept on the mooring system paying particular attention to chaffing point, on draft and trim and to the anchoring position. In general OGV and crew must be in an advanced state of readiness at all times in order to be ready to deal with emergencies.

In the event of bad weather it may be necessary to abort the operation and to cast off.

Master of OGV must be in permanent contact with the barge operation manager.

Spot checks and intermediate draught surveys must be carried out during lightening operations, at least after 12 and 18 hours from the commencement of the lighterage operation jointly with the barge operation manager.

Final drafts survey will determine the lightened quantity and OGV draught.

Environmental conditions may not always be ideal for reading draught, in such case the quantity to be lightened may be more in order to suit draught restrictions safely up to the maximum allowed in the port of Bourgas.

As customary, the OGV will be responsible for her trim and stress conditions. Consequently, all draught checks, cargo calculations, etc, will be performed by the ship's Chief Officer and the lightering operator will agree only to the timing

---

**RIDER CLAUSES TO MV "............"**
**CHARTER PARTY DATED ........**

---

of the operation. All quantity received by the lightering barge will be based on the "said to weigh, said to be, all quality and quantity unknown".

Although the entire operation can be subjected to checks and inspections by the cargo receivers, the barge operator is not responsible for any error, discrepancy or difference that may be found at the completion of her discharge.

A Statement of Facts, signed by both OGV master and barge operation manager, describing the entire operation, shall be prepared and shall constitute the only document accepted by the barge operation manager in respect of both the OGV and the cargo receivers.

## 10. POLLUTION

OGV master shall take all necessary measures to avoid pollution from OGV.

As in all offshore operation, the final result is based on the mutual co-operation and forethought put by all parties concerned. The Barge operator for his part will put the best good will, his notable experience and capabilities to achieve the best results and efficiency. It expects in return, the same degree of co-operation from the vessel's Master, her Officers and crew as well as from all shore based concerns involved into this vessel's turnaround.

THE OWNERS:                                    THE CHARTERERS: